1  Scott Edward Cole, Esq. (S.B. #160744)
   Matthew R. Bainer, Esq. (S.B. #220972)
2  Hannah R. Salassi, Esq. (S.B. # 230117)
   **SCOTT COLE & ASSOCIATES, APC**
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone: (510) 891-9800
   Facsimile:  (510) 891-7030
5  E-mail: scole@scalaw.com
   E-mail: mbainer@scalaw.com
6  E-mail: hsalassi@scalaw.com
   Web:     www.scalaw.com
7
8  Attorneys for Representative Plaintiff
   and the Plaintiff Classes
9

10             **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12

13  JACOB BALTAZAR, CLAUDIA          )   **Case No. C10-03231**
    KELLER, JOHN R. BROWNING,        )
14  MATTHEW HALPER, JUDI             )
    RITCHIE, CHADWICK HORN,          )   **CLASS ACTION**
15  individually, and on behalf of all others   )
    similarly situated,              )   **SECOND AMENDED COMPLAINT FOR**
16                                   )   **DAMAGES, INJUNCTIVE RELIEF AND**
                      Plaintiffs,    )   **RESTITUTION**
17                                   )
    vs.                              )
18                                   )   **[Jury Trial Demanded]**
    APPLE, INC.,                     )
19                                   )
                      Defendant.     )
20  _____ )

21  Representative Plaintiffs allege as follows:

22

23             **PRELIMINARY STATEMENT**

24      1.       This is a class action, brought under Rule 23 of the Federal Rules of Civil

25  Procedure, seeking damages, restitution, interest thereon, injunctive and other equitable relief

26  and reasonable attorneys' fees and costs on behalf of Representative Plaintiffs and all other

27  persons who have purchased the iPad tablet computer (hereinafter referred to as the "Class

28  Members," the "Plaintiff Classes" and/or either of the Classes defined herein) from defendant

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

APPLE, INC. (hereinafter referred to as "APPLE" and/or "Defendant") either directly therefrom or indirectly from a distributor or retailer thereof within the United States at any time during the applicable limitations period. The Representative Plaintiffs, on behalf of themselves and all Class Members, also seek injunctive relief and restitution of all benefits APPLE has enjoyed from its unlawful and/or deceptive business practices, as detailed herein.

2.      At its core, this action is based on APPLE's failure to deal fairly and honestly with potential consumers of its newest innovation, the iPad. APPLE designed and marketed the iPad as a portable tablet computer that could be used for myriad functions: e-reading, e-mail, surfing the internet, playing games, watching movies and a host of other applications. Indeed, the sheer number of applications available for use with the device has resulted in the ubiquitous phrase: "there's an app for that." Since few people would contest the fact that all of these functions can be performed more quickly and efficiently on a standard computer workstation, the attractive feature of a device like the iPad is **mobility** -- the promise that consumers can use those features un-tethered to the home or office. Indeed, APPLE's promises about the mobility of the iPad were consistent with those communicated to the public by APPLE in connection with the marketing and sale of other APPLE mobile devices, such as the iPod and the iPhone. Moreover, the ability of those devices to function outdoors undoubtedly helped shape consumer consciousness about the likelihood that APPLE's representations about the iPad would also be true.

3.      Whether or not consumers knew of APPLE's track record in providing mobile devices, however, the iPad was foreign to the public before its initial launch in early 2010 and, as such, consumers naturally looked to APPLE's iPad advertising campaign to develop an expectation of its reliability and functionality, to wit: as provided in greater detail herein, APPLE's advertising of the iPad was specifically directed at creating the perception that the device could be used for commonplace purposes such as reading, surfing the internet or reading e-mail, *anywhere*, whether it be while sitting in a park, at an outdoor cafe, or on one's own front stoop. Outdoor capabilities are exactly what APPLE promised of the iPad, and, as alleged in detail herein, are exactly what the iPad fails to deliver.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**JURISDICTION AND VENUE**

4.       Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction) and/or 28 U.S.C. §1331 (controversy arising under United States law). Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

5.       Venue is proper in this Court under 28 U.S.C. § 1391 because the events that give rise to Plaintiffs' claims took place within the Northern District of California and because APPLE is headquartered, and maintains its principal place of business, in this District. Moreover, APPLE's sales activities for the iPad originate in this District, including making the iPad available for purchase through its website, an essential act leading to the consummation of many sales of the iPad within this District.

**PLAINTIFFS**

6.       Jacob Baltazar, Claudia Keller, John R. Browning, Matthew Halper, Judi Ritchie and Chadwick Horn, the named/representative Plaintiffs identified herein, were and are natural persons and, during the relevant time period, purchased and used (or attempted to use) the iPad, yet did not receive the full value of the product, as promised by APPLE.

7.        As used throughout this Complaint, the term "Class Members" and/or the "Plaintiff Classes" refers to the named plaintiffs herein as well as each and every person eligible for membership in one or more of the classes of persons, as further described and defined herein.

8.       At all times herein relevant, Representative Plaintiffs were and are persons within each of the classes of persons, as further described and defined herein.

9.       Representative Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated and proximately damaged by the unlawful conduct described herein.

///

///

///

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## DEFENDANT

10.     At all times herein relevant, APPLE was a corporation, duly licensed in California and doing business in this Judicial District as well as throughout the United States. APPLE maintains its principal place of business in Cupertino, California. All of the conduct relevant to the claims brought in this litigation occurred and/or originated in/from California.

11.     Representative Plaintiffs are informed and believe and, on that basis, allege that, at all relevant times herein-mentioned, each of the defendants either identified herein and/or who may be identified in subsequent versions hereof was the agent and/or employee of each of the remaining defendants and, in doing the acts herein alleged, was acting within the course and scope of such agency and/or employment.

## CLASS ACTION ALLEGATIONS

12.     Representative Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following Plaintiff Classes:

California Class:
"All persons who purchased, within the State of California, APPLE, Inc.'s iPad tablet computer."

National Class:
"All persons who purchased, within the United States, APPLE, Inc.'s iPad tablet computer."

13.     Defendant and its officers and directors are excluded from both of the Plaintiff Classes.

14.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable:

a.      Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible, insofar as the Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the millions of individuals. Membership in the Classes will be determined by analysis of point of sale, electronic-mail and/or other transactional information, among other records maintained by APPLE.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

b.    <u>Commonality</u>: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over questions and issues solely affecting individual members, including, but not necessarily limited to:

1)    Whether defendant APPLE knew or should have known of the problems associated with overheating of the iPad, either/both before the launch of the product and/or thereafter, as alleged herein;

2)    Whether defendant APPLE had a duty to disclose to consumers the iPad's functionality under particular environmental conditions;

3)    Whether defendant APPLE's advertising of the iPad was false, deceptive, and/or misleading;

4)    Whether defendant APPLE violated California Business and Professions Code §17500, *et seq.* by engaging in misleading or deceptive advertising;

5)    Whether defendant APPLE violated California Civil Code §1750, *et seq.* by engaging in unfair or deceptive trade practices;

6)    Whether defendant APPLE breached express warranties and/or implied warranties of merchantability and/or fitness regarding the iPad's functionality under particular environmental conditions;

7)    Whether defendant APPLE violated California Civil Code §1790, *et seq.* by breaching express and implied warranties;

8)    Whether defendant APPLE intentionally or negligently misrepresented the iPad's functionality under particular environmental conditions;

9)    Whether defendant APPLE engagement in false representations regarding the iPad's functionality under particular environmental conditions constituted a fraud on consumers; and

10)   Whether APPLE violated California Business and Professions Code § 17200, *et seq.* by engaging in unfair, unlawful and/or fraudulent business practices.

c.    <u>Typicality</u>: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

d.  Adequacy of Representation: The Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who is experienced in conducting litigation of this nature. The Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entirety. The Representative Plaintiffs anticipate no management difficulties in this litigation.

e.  Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

## COMMON FACTUAL ALLEGATIONS

15.   Established in 1976, APPLE has consistently been heralded as an innovative designer and distributer of various computer hardware and software packages – the company being perhaps best-known for its original Apple computer (1976), Apple Macintosh computer (1984) and, in recent years, the iPod and iPhone products.

16.   On January 27, 2010, Steve Jobs, APPLE's Chief Executive Officer, unveiled the company's then-newest product, the iPad, and promised a March 2010 launch date for sale of the so-called revolutionary device in the United States. Post-release (i.e., after approximately April 2010), APPLE has sold well over four million iPads, and sales continue in earnest today. Indeed, sales thereof have led to billions of dollars in APPLE revenue.

17.   As such, the iPad has been purchased by millions of consumers, both in California and nationwide, all of whom are putative Class Members.

18.   The iPad is a tablet computer, marketed for consumption of media such as books and periodicals, movies, music, games and for general Internet and e-mail access. The iPad is controlled by a multitouch display, weighs in at roughly 700 grams, uses the same

operating system as the iPhone, and can run its own specific applications as well as those developed originally for the iPhone, making it appealing to users both familiar and unfamiliar with the iPhone.

19. As with many technological devices, the iPad is equipped with a liquid crystal display ("LCD") which sends light through crystal filters in order to create the images seen on-screen. The use of light necessarily requires a power source, which, in turn, generates heat and affects the temperature of the device.

20. The internal and external temperature parameters within which the iPad operates are/were pre-set by APPLE, and are/were monitored by software within the iPad. Representative Plaintiffs are informed and believe and, on that basis, allege that the temperature parameters established by APPLE, compounded by the device's black face and lack of any cooling mechanism, were set too low to allow the device to function as represented and promised by APPLE.

21. Representative Plaintiffs are informed and believe and, on that basis, allege that APPLE intended and did, in fact, advertise and market the iPad as a direct (and superior) competitor to other tablet computers and/or e-readers (e.g., the Amazon "Kindle"). Among other aims, APPLE's advertisements have touted the iPad's "iBooks" application, which allows the iPad to act as an eBook reader, complete with APPLE's own bookstore, a feature that also put the iPad in direct competition with the Amazon Kindle and/or other competitors' e-readers. The presence of this and many other iPad applications such as an email reader, the "Safari" web browser, "iTunes," "iPod," and the availability of numerous built-in and add-on applications, made the iPad an attractive tool for consumers desiring the option of extended use of the product both indoors and outdoors, and under variable environmental conditions.

22. APPLE advertises the use of the iPad, both indoors and outdoors, and under variable environmental conditions, in a variety of media, including, but not limited to, the internet, television, and in written materials regarding the product.

23. APPLE expressly represented that the iPad would function in temperature ranges between 32 and 95 degrees Fahrenheit in the specifications included in the original

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

1    packaging for each iPad. The production specifications are also available on APPLE's website

2    (www.apple.com).

3        24.      Representative Plaintiffs are informed and believe and, on that basis, allege that

4    APPLE's first commercial depicting the iPad being used in a variety of sunny, outdoor

5    environments was aired on television stations nationwide at the same time as the release of the

6    iPad, and disseminated globally via APPLE's post of the commercial on its website. This

7    commercial displayed scenes including, but not necessarily limited to:

8          a.      Several scenes of a woman sitting on the front stoop of a building on a
   sunny day, unlocking her iPad screen and looking at the available
9               applications and, later, looking at a photograph on the iPad;

10        b.      A man sitting on a fire escape on a sunny day, using his iPad to send a
   picture via e-mail;

11        c.      A woman bringing the iPad along with her while riding on the back of a
   scooter and using the iPad to find directions;

12        d.      A man standing on a street on a sunny day, using an iPad to read Popular
   Science magazine;

13        e.      Several scenes with a man sitting outside on a porch, reading a book,
   checking the weather and playing Scrabble on an iPad;

14        f.      Several scenes with a woman sitting in the grass on a sunny day, using an
   iPad to look at news stories, play music, find recipes and read the Wall
15               Street Journal newspaper;

16        g.      Multiple images of a woman sitting at an outdoor cafe table on a sunny
   day, using an iPad to access Facebook, surf the internet and read the New
   York Times newspaper.

17        25.      Thereafter, APPLE posted a subsequent commercial on its website

18    (www.apple.com) showing even more images of the iPad being used outdoors, including being

19    affixed to the dashboard of a car and the gas tank of a motorcycle. Indeed, these depictions

20    promote the iPad as useable under the conditions shown, not to mention their solicitation of

21    irresponsible, unsafe and potentially unlawful conduct (e.g., encouraging consumers to use this

22    electronic device while driving, in likely violation of California Vehicle Code § 23123.5).

23        26.      According to APPLE's representations, the iPad is useable outdoors in a variety

24    of conditions, including sunshine, within the temperature range identified in the product

25    specifications. However, the iPad does not live up to APPLE's representations because it

26    overheats so quickly under common weather conditions (e.g., in direct sunlight in connection

27    with virtually any ambient air temperature) that it does not function for prolonged use either

28    outdoors, or in many other warm conditions, even well within the specified temperature range of

32 to 95 degrees Fahrenheit.

27.     Nowhere in any of APPLE's press releases (e.g., the January 27, 2010 press release announcing the iPad and some of its applications, such as "iBooks" and "iTunes," or the several press releases since that date which boast sales milestones reached by the iPad), and nowhere in any of APPLE's advertising materials which market the iPad to consumers, does APPLE correct its false statements and/or mention that the iPad is unusable and/or unreliable under the conditions advertised.

28.     Indeed, even on APPLE's website, defendant represented that the iPad was suitable for uses such as reading "books," a function traditionally enjoyed outdoors as much as indoors, in statements like "[r]eading on iPad is just like reading a book." However, although the reasonable consumer may understand that an e-reader is not identical in every way to a traditional book (e.g., in appearance), APPLE's promise that the iPad was suitable and functional as a replacement for hard copy books remains false. Contrary to the promise that the iPad could adequately and functionally replace a book, using the iPad is not "just like reading a book" at all, since books do not close unexpectedly when the reader is enjoying them outside in the sunshine.

29.     The process of developing and manufacturing the iPad necessarily included determining its functional temperature range and conditions for use. Representative Plaintiffs are informed and believe and, on that basis, allege that APPLE conducted tests of the iPad's functionality within the prescribed temperature range and under the conditions APPLE intended and advertised for its use as part of the development process. The results of such testing would have revealed that the iPad does not, in fact, operate reliably within that temperature range and under the conditions represented by APPLE. Indeed, even in the unlikely event that APPLE's testing of the iPad was not performed with an eye toward this feature, APPLE had a duty to perform such tests to ensure that the product was operational within the temperature range and conditions APPLE advertised for its use and before making the claims detailed in this pleading.

30.     Moreover, consumer complaints began shortly after the release of the iPad including, by way of example:

a.     "Mine over heats all the time I take it outside to read. I should have kept my kindle for outdoor reading. (in NJ, and it's not that hot out). I find I

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
1970 BROADWAY, NINTH FLOOR
THE WACHOVIA TOWER
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

have to take it out of it's cover and sit in the shade. So much for getting sun." (www.the ipadfan.com/heated-ipad-debate, approx. June 23, 2010.)

b.     "I live in NYC and I had taken my ipad out on my 3rd floor balcony to do some reading. After putting the ipad down for what could not have been more than 5 minutes to go inside and grab a drink, I returned to the overheating error. Well, I was planning on taking the ipad with me on vacation to Aruba to do some reading by the pool, but I don't think that's going to happen now being that the high fir [sic] the day in NYC was only about 70 when it overheated. How are people in California and Florida using this thing outdoors?" (www.product-reviews.net/2010/04/06/APPLE

-ipad-overheating-problems-are-you-affected, approx. April 8, 2010)

c.     "Yes, my new ipad just overheated in less than 15 minutes time! Very frustrated as it lost the long note I was in the process of typing. Secondly, one of the main reasons I ordered it was to use outside inky [sic] back yard. I have a mac in the house I can use, I want to get out of the house. This is ridiculous. I was sitting in the shade, underan [sic] umbrella with a nice breeze. I want a new one when APPLE fixes this problem. At least there should be a warning to save work before it shuts down. It is an immediate shutdown." (www.product-reviews.net/2010/04/06/APPLE-ipad-overheating-problems-are-you-affected, approx. June 4, 2010)

d.     "I just returned my iPad. It kept overheating and turned out to be unusable in even moderate weather. I live in New York, and in the last 5 days, only 1 day was around 85 degrees...My iPad overheated 8 times in five days. I really feel bad for everyone in the south and mid-west, as they must be really having trouble..."
(www.ilounge.com/index.php/news/comments/early-ipad-issues-wi-fi-problems-overheating, April 7, 2010)

31.     Members of the Plaintiff Classes also made complaints directly to APPLE employees at various APPLE stores regarding the functionality limitations described herein.

32.     Representative Plaintiffs are informed and believe and, on that basis, allege that APPLE maintains an internal marketing feedback system which tracks customer demographics, competing products and technology, customer complaints and product returns. As a result, APPLE knew, or reasonably should have known, of the customer complaints regarding the iPad.

33.     At the time APPLE received confirmation from consumers that the iPad was not functioning as represented, its obligation to cease any and all false or misleading advertisements and to disclose information contrary to those representations to consumers was heightened. APPLE's failure to take any steps to correct or curtail its false advertising thereafter makes the injunctive relief requested herein a substantial component of the aggregate remedies sought and, particularly in light of APPLE's continued sales of the iPad today, perhaps the most significant

component of relief.

34.     In or about early May 2010, Representative Plaintiff Claudia Keller purchased an iPad 3G from an APPLE store located in Costa Mesa, California, after seeing the commercial described in paragraph 24, above.

35.     Representative Plaintiff Claudia Keller purchased the iPad in reliance on APPLE's advertisement showing the iPad's use outdoors, and with the reasonable expectation that she would be able to use the e-reading and e-mail functions of the iPad under the same conditions as shown therein.

36.     Less than a month after purchase, Representative Plaintiff Claudia Keller attempted to use the iPad outdoors next to her pool in an ambient temperature of less than 90 degrees. After less than five minutes of use, the device displayed an overheating message and then shut-down. Ms. Keller experienced the same problem on at least two other occasions while attempting to use the device outdoors within the temperature range specified by APPLE, including having the device shut-down during use at an outdoor cafe, a scenario specifically depicted in the commercial described in paragraph 24. After the repeated incidents of shut-down, Ms. Keller simply stopped using the device outdoors altogether due to its unreliability.

37.     Representative Plaintiff John Browning purchased an iPad 3G in April 2010 through an internet website after viewing, and in reliance on, the information available on APPLE'S website regarding the iPad, including the "Tech Specs" page containing the device's temperature parameters. Based on APPLE's representations, Plaintiff John Browning purchased the device for use while attending outdoor activities such as his children's sporting events.

38.     Within one week of purchase, while using the iPad outdoors in an ambient temperature of approximately 70 degrees and after less than 20 minutes of use, Representative Plaintiff John Browning experienced his first shut down of the iPad outside; the device displayed an overheating message and powered off. As a result, Representative Plaintiff John Browning believes that the iPad is not suitable for outdoor use and no longer uses the device in direct sunlight, in order to avoid further shut-downs.

39.     Representative Plaintiff Jacob Baltazar purchased an iPad 3G from an APPLE

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

store located in Santa Clara, California on or about April 30, 2010, after seeing the commercial depicting use of the iPad outdoors (referenced in paragraph 24, above), in reliance on APPLE's representations that the device could be used outdoors, and with the expectation that he would be able to use the device outside on his college campus.

40. To date, Representative Plaintiff Jacob Baltazar has experienced the device overheating and shutting-down on many occasions, oftentimes after using it for only five to ten minutes, and in ambient temperatures ranging from 65-85 Fahrenheit. Plaintiff Baltazar no longer relies on his iPad to function outdoors.

41. Representative Plaintiff Matthew Halper purchased an iPad 3G from an APPLE store located in Miami, Florida on or about May 25, 2010. Representative Plaintiff Matthew Halper purchased his iPad after reading the information available on APPLE's website regarding the iPad, including the technical specifications setting forth the operating temperature parameters, after viewing the television and web commercials depicting use of the iPad outdoors (described in paragraphs 24 and 25, above), in reliance on APPLE's representations that the device could be used outdoors, and with the intention of using the iPad to work remotely from outdoor locations.

42. Within a few weeks of purchase, Representative Plaintiff Matthew Halper experienced his iPad unexpectedly overheating and shutting down after approximately twenty minutes of use outdoors, in an ambient temperature of approximately 80 degrees. Representative Plaintiff Matthew Halper has continued to experience his iPad overheating and shutting down during use outdoors within the temperature range specified by APPLE. As a result of the device's unexpected overheating, Representative Plaintiff Matthew Halper is unable to reliably use the device for business purposes, or continuous use of any kind, when operated outdoors.

43. Representative Plaintiff Judi Ritchie purchased an iPad 3G from an APPLE store in Paramus, New Jersey on or about June 4, 2010, after seeing the commercial depicting use of the iPad outdoors (described in paragraph 24, above), in reliance on APPLE's representations that the device could be used outdoors, and with the intention of using the iPad to perform her job, which involves event planning for an outdoor space of over sixty acres.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

44.     On or about the first month after her iPad purchase, Representative Plaintiff Judi Ritchie attempted to use her iPad outdoors, in an ambient temperature of approximately 85 degrees, and experienced the device overheating and shutting down within ten minutes of use. After exchanging the device for a new one and discovering that the problem was not limited to the original device, Representative Plaintiff Judi Ritchie ceased using her iPad outside because of the device's lack of reliability, rendering it virtually useless for her work purposes.

45.     Representative Plaintiff Chadwick Horn purchased an iPad 3G from a BestBuy store in San Diego, California on or about April 3, 2010, after reading the information on APPLE's website regarding the iPad, including the technical specifications containing the operating temperature for the device, in reliance on APPLE's representation that the device would be useable within that range, and with the intention of using the iPad for work purposes while on business trips, including use outdoors.

46.     On the same day Representative Plaintiff Chadwick Horn purchased his iPad, he attempted to use the device while sitting outdoors in his car, in an ambient temperature of approximately 60 degrees, and the device unexpectedly overheated and shut down within fifteen minutes. Since the initial occurrence, Representative Plaintiff Chadwick Horn has frequently experienced his iPad overheating and shutting down when used in direct sunlight, despite his conscientious use of the device only within the temperature range specified by APPLE. As a result, Representative Plaintiff Chadwick Horn is unable to rely on the iPad when traveling for work and brings a laptop computer for business purposes.

47.     As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Representative Plaintiffs and Class Members were misled into purchasing the iPad, unjustly enriching Defendant at the expense of these consumers. Defendant, at all times, knew that Representative Plaintiffs and the Class Members would rely upon the misrepresentations and/or omissions of Defendant. Defendant's concealment, misbranding and non-disclosure were intended to influence consumers' purchasing decisions and were done with reckless disregard for the rights of consumers. Representative Plaintiffs' and Class Members' reliance and resultant substantial monetary loss were reasonably foreseeable by Defendant.

48.     This action is brought to redress and end APPLE's pattern of unlawful conduct. Indeed, without an award of damages and injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

**FIRST CLAIM FOR RELIEF**
**FRAUD**
***(for the California and Nationwide Classes)***

49.     Representative Plaintiffs incorporate in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

50.     The conduct of Defendant constitutes a fraud against Representative Plaintiffs and members of each of the Classes. Defendant, directly or through its agents and employees, made false representations to Representative Plaintiffs and members of each of the Classes that were likely to deceive Representative Plaintiffs and members of each of the Classes. Representative Plaintiffs and members of each of the Classes were misled by these false representations in purchasing goods and/or services from Defendant and/or entering into agreements with Defendant.

51.     Defendant's false representations include, but are not limited to, statements on APPLE's website (e.g., that reading the iPad is just like reading a book), commercials depicting outdoor use of the iPad, and the temperature specifications included with the iPad and/or on Defendant's website, as alleged herein.

52.     Defendant knew, or reasonably should have known, of the false representations alleged herein based on its development and testing of the iPad, as well as consumer complaints regarding the device.

53.     Moreover, because Defendant knew or should have known that the iPad does not reliably or consistently function as advertised, Defendant was, and continues to be, obligated to disclose such contrary information to consumers. Defendant's failure to disclose the limitations on the iPad's functionality constitutes a further fraud on the Representative Plaintiffs and members of each of the Classes, as alleged herein.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

54.     Defendant's conduct, as alleged herein, was intended to induce reliance by consumers of the iPad as a mobile device useable in a variety of conditions, including outdoors in sunshine and within the specified temperature parameters. Such messages were consistent with those communicated publicly by APPLE in connection with the marketing and sale of other APPLE mobile devices, such as the iPod and the iPhone.

55.     Representative Plaintiffs and members of each of the Classes reasonably and justifiably relied on Defendant's misrepresentations when purchasing the iPad, were unaware of the existence of facts that Defendant suppressed and failed to disclose, and, had the facts been known, would not have purchased the iPad and/or would not have purchased it at the price at which it was offered.

56.     Specifically, Representative Plaintiff and members of each of the Classes viewed the statements on APPLE's website, the commercials depicting outdoor uses for the iPad and/or the temperature specifications included with the iPad or on Defendant's website, as alleged herein, and in reliance on those representations and on APPLE's failure to disclose the iPad's functionality limitations, purchased the device for use outdoors.

57.     As a direct and proximate result of Defendant's wrongful conduct, Representative Plaintiffs and members of each of the Classes have suffered and continue to suffer economic losses and other general and specific damages. Such injuries include, but are not limited to, the monies paid to Defendant for a device which can be used for only a fraction of its intended purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor conditions, further limiting its utility and value to consumers. In short, Plaintiffs have paid far more for a product than the value they expected and/or received in return.

58.     Moreover, in that, at all times herein mentioned, Defendant intended to cause or acted with reckless disregard for the probability of causing damage to Representative Plaintiffs and members of each of the Classes, and because Defendant was guilty of oppressive, fraudulent and/or malicious conduct, Representative Plaintiffs and members of each of the Classes are entitled to an award of exemplary or punitive damages against Defendant in an amount adequate to deter such conduct in the future. Specifically, despite knowledge of the functionality

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

1   limitations of the iPad, APPLE has refused and continues to refuse to provide any meaningful

2   response or remedy.

3

4                    **SECOND CLAIM FOR RELIEF**
                    **INTENTIONAL MISREPRESENTATION**
5                    *(for the California and Nationwide Classes)*

6        59.     Representative Plaintiffs incorporate in this claim for relief each and every

7   allegation of the preceding paragraphs, with the same force and effect as though fully set forth

8   herein.

9        60.     At all times relevant herein, Defendant was engaged in the business of

10  designing, manufacturing, marketing, distributing and/or selling the iPad, as alleged herein.

11       61.     Defendant willfully, falsely and knowingly misrepresented material facts

12  relating to the character and quality of the iPad, in ways including, but not necessarily limited to,

13  APPLE's website statements, commercials depicting various outdoor uses, and the temperature

14  specifications for the iPad, as alleged herein.

15       62.     Moreover, because Defendant knew or should have known that the iPad does

16  not reliably or consistently function as advertised, Defendant was, and continues to be, obligated

17  to disclose such contrary information to consumers. Defendant's failure to disclose the

18  limitations on the iPad's functionality constitutes further misrepresentation of the character and

19  quality of the iPad.

20       63.     Defendant knew that the misrepresentations alleged herein were false at the time

21  it made them and/or acted recklessly in making such misrepresentations, based on Defendant's

22  development and testing of the iPad as well as consumer complaints regarding the device.

23       64.     Defendant's misrepresentations were the type of misrepresentations that

24  are/were material (i.e., the type of misrepresentations to which a reasonable person would attach

25  importance and would be induced to act thereon in making purchase decisions). Specifically,

26  defendant's misrepresentations were material in that Representative Plaintiffs and members of

27  each of the Classes purchased the iPad as a mobile device useable in the manner depicted in

28  Defendant's advertisements and within the temperature parameters specified by Defendant.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

65.     Representative Plaintiffs and members of each of the Classes reasonably and justifiably relied on Defendant's misrepresentations when purchasing the iPad, were unaware of the existence of facts that Defendant suppressed and failed to disclose and, had the facts been known, would not have purchased the iPad and/or would not have purchased it at the price at which it was offered. Representative Plaintiffs' and Class members' reliance was a substantial factor in the purchase of the device, resulting in the harm alleged herein.

66.     Specifically, Representative Plaintiff and members of each of the Classes viewed the statements on APPLE's website, the commercials depicting various outdoor uses and/or the temperature specifications included with the iPad or on Defendant's website, as alleged herein, and in reliance on those representations and on APPLE's failure to disclose the iPad's functionality limitations, purchased the device for use outdoors.

67.     Defendant intended that Representative Plaintiffs and members of each of the Classes rely on the misrepresentations alleged herein and purchase an iPad for the uses advertised, including outdoor use.

68.     As a direct and proximate result of Defendant's intentional misrepresentations, Representative Plaintiffs and members of each of the Classes were injured in ways including, but not limited to, the money they paid to Defendant for a device which can be used for only a fraction of its intended purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor conditions, further limiting its utility and value to consumers.

69.     Damages resulting from such injury may, but do not necessarily include, nor are limited to, the purchase of the iPad and/or the purchase of the iPad at the price at which it was offered.

70.     Moreover, in that, at all times herein mentioned, Defendant intended to cause or acted with reckless disregard of the probability of causing damage to Representative Plaintiffs and members of each of the Classes, and because Defendant was guilty of oppressive, fraudulent and/or malicious conduct, Representative Plaintiffs and members of each of the Classes are entitled to an award of exemplary or punitive damages against Defendant in an amount adequate to deter such conduct in the future. Specifically, despite development and testing of the iPad,

including the device's temperature parameters and functionality within those parameters, as well as consumer complaints regarding the iPad's failure to function as advertised, alleged herein, APPLE has refused, and continues to refuse, to provide any meaningful response or remedy.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**
(*for the California and Nationwide Classes*)

71.      Representative Plaintiffs incorporate in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

72.      Defendant owed a duty to Representative Plaintiffs and members of each of the Classes to exercise reasonable case in making representations about the iPad.

73.      Defendant should have known of the nature of the problems associated with the iPad, as detailed in this Complaint, and, thus, should have known that its representations, as also detailed, at least in part, in this Complaint, were false. In addition, given APPLE's development and testing of the iPad, including the device's temperature parameters, as well as the existence of consumer complaints regarding the iPad's failure to function as advertised, Defendant had no reasonable ground upon which to believe the representations were true.

74.      Moreover, because Defendant knew or should have known that the iPad did/does not reliably or consistently function as advertised, Defendant was, and continues to be, obligated to disclose such contrary information to potential consumers.

75.      Defendant's representations were negligently and recklessly made to potential consumers and the general public (including Representative Plaintiffs and members of each of the Classes) through APPLE's website statements, the commercials depicting various outdoor uses, and the temperature specifications included with the iPad's packaging material and/or appearing on APPLE's website, as alleged herein.

76.      Moreover, Defendant has not disclosed any information regarding the failure of the iPad to reliably function as advertised.

77.       Representative Plaintiffs and members of each of the Classes viewed and

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  reasonably and justifiably relied on Defendant's misrepresentations when purchasing the iPad,

2  were unaware of the existence of facts that Defendant suppressed and failed to disclose and, had

3  the facts been known, would not have purchased the iPad and/or would not have purchased it at

4  the price at which it was offered.

5      78.     As a direct and proximate result of these misrepresentations, Representative

6  Plaintiffs and members of each of the Classes have been damaged in an amount to be proven at

7  trial. Representatives Plaintiffs' and members of each of the Classes' damages include, but are

8  not limited to, the monies paid to Defendant for a device which can be used for only a fraction of

9  its intended purposes, as well as the fear and anxiety induced by the iPad's unreliable

10  performance in outdoor conditions, further limiting its utility and value to consumers.

11

12                          **FOURTH CLAIM FOR RELIEF**
                        **DECEPTIVE ADVERTISING PRACTICES**
13              **(California Business & Professions Code §§ 17500, et seq.)**
                      **(*for the California and Nationwide Classes*)**
14

15      79.     The Representative Plaintiffs incorporate in this claim for relief each and every

16  allegation of the preceding paragraphs, with the same force and effect as though fully set forth

17  herein.

18      80.     California Business & Professions Code § 17500 prohibits "unfair, deceptive,

19  untrue or misleading advertising."

20      81.     Defendant violated California Business & Professions Code § 17500 when it

21  represented that the iPad possessed characteristics and a value that it did not actually have (e.g.,

22  that the device is operational as a mobile device under the outdoor conditions advertised,

23  including sunshine, and within the specified temperature parameters); these representations were

24  made through APPLE's website statements, the commercials depicting the varied outdoor uses

25  described herein, and in the temperature specifications included with the iPad and/or appearing

26  on the APPLE website.

27      82.     Defendant's deceptive practices were specifically designed to induce

28  Representative Plaintiffs and members of each of the Classes to purchase the iPad. Defendant

---

engaged in broad-based marketing efforts, including posting statements on APPLE's website, releasing commercials on television stations nationwide, and publishing the temperature range with the product specifications, as alleged herein, to reach Representative Plaintiffs and members of each of the Classes, and induce them to purchase this product.

83.     The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

84.     APPLE knew or, in the exercise of reasonable care, should have known, that the representations were untrue and/or misleading.

85.     To this day, Defendant continues to engage in unlawful, unfair and deceptive practices in violation of California Business & Professions Code § 17500. Specifically, Defendant continues to conceal the overheating problems associated with the iPad, as described in this Complaint, and has failed to provide an adequate remedy for its violations.

86.     As a direct and proximate result of Defendant's unlawful conduct in violation of California Business & Professions Code § 17500, Defendant should be required to provide all proper remedies to Representative Plaintiffs and members of each of the Classes.

**FIFTH CLAIM FOR RELIEF**
**CONSUMERS LEGAL REMEDIES ACT**
**(California Civil Code §1750, et seq.)**
**(*for the Nationwide and California Classes*)**

87.     Representative Plaintiffs incorporate in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

88.     Representative Plaintiffs and the non-entity members of each of the Classes are consumers who purchased APPLE's iPad, directly or indirectly from Defendant, for personal use.

89.     APPLE is a California resident, and developed and distributed the false and misleading advertising alleged herein from its headquarters in Cupertino, California.

90.     Through APPLE's website statements, the commercials depicting various

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  outdoor uses described herein, and the temperature specifications included with the iPad and/or

2  appearing on APPLE's website, Defendant represented that the iPad had/has characteristics, uses

3  and/or benefits which it did/does not have, (e.g., that the device is operational as a mobile device

4  under the outdoor conditions depicted, including sunshine, and within the specified temperature

5  parameters) which constituted and continues to constitute an unfair or deceptive trade practice

6  under the provisions of California Civil Code § 1770(a)(5) (the "Consumers Legal Remedies

7  Act").

8  91.    Moreover, because the iPad does not reliably or consistently function as

9  advertised, Defendant was, and continues to be, obligated to disclose such contrary information

10  to consumers.

11  92.    When purchasing the iPad, Plaintiffs and members of each of the Classes

12  viewed and reasonably and justifiably relied on the misrepresentations developed in and

13  distributed from California, by Defendant, were unaware of the existence of facts that Defendant

14  suppressed and failed to disclose and, had the facts been known, would not have purchased the

15  iPad or would not have purchased it at the price at which it was offered.

16  93.    Representative Plaintiffs and the members of each of the Classes have been

17  directly and proximately injured by Defendant's conduct in ways including, but not limited to,

18  the money paid to Defendant for a device which can be used for only a fraction of its intended

19  purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor

20  conditions, further limiting its utility and value to consumers.

21  94.    Insofar as Defendant's conduct violated California Civil Code § 1770(a)(5),

22  Representative Plaintiffs and members of each of the Classes are entitled to (pursuant to

23  California Civil Code § 1780, *et seq.*) and do seek injunctive relief to end Defendant's violations

24  of the California Consumers Legal Remedies Act.

25  95.    In addition, pursuant to California Civil Code § 1782(a), Representative

26  Plaintiffs on their own behalf and on behalf of members of each of the Classes, have notified

27  APPLE of the alleged violations of the Consumer Legal Remedies Act. Although thirty days

28  have elapsed from the date of the notification letter, APPLE has failed to provide appropriate

1  relief for the violations.

2        96.      As a direct and proximate result of Defendant's unfair and deceptive trade

3  practices, Representative Plaintiffs and members of each of the Classes have been damaged in an

4  amount to be proven at trial. Representative Plaintiffs further request that this Court enter such

5  orders or judgments as may be necessary to restore to any person in interest any money which

6  may have been acquired by means of such unfair business practices, and for such other relief as

7  provided in California Civil Code § 1780 and in this Complaint's Prayer for Relief.

8        97.      Moreover, in that, at all times herein mentioned, Defendant intended to cause or

9  acted with reckless disregard of the probability of causing damage to Representative Plaintiffs

10  and members of each of the Classes, and because Defendant was guilty of oppressive, fraudulent

11  and/or malicious conduct, Representative Plaintiffs and members of each of the Classes are

12  entitled to an award of exemplary or punitive damages against Defendant in an amount adequate

13  to deter such conduct in the future. Specifically, despite knowledge of the inadequate internal

14  temperature restrictions set for the iPad, and consumer complaints regarding overheating of the

15  device, as alleged herein, APPLE has refused, and continues to refuse, to provide any meaningful

16  response or remedy.

17

18                          **SIXTH CLAIM FOR RELIEF**

19        **BREACH OF SONG-BEVERLY CONSUMER WARRANTY ACT**
                    **(California Civil Code § 1790, et seq.)**
20                   ***(for the California Class only)***

21        98.      Representative Plaintiffs incorporate in this claim for relief each and every

22  allegation of the preceding paragraphs, with the same force and effect as though fully set forth

23  herein.

24        99.      The iPad is a "consumer good" within the meaning of California Civil Code §

25  1791(a).

26        100.     Representative Plaintiffs and each member of the California Class purchased an

27  iPad in California.

28        101.     Defendant's express warranty and implied warranty of merchantability arose out

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

of and/or were related to the sale of the iPad.

102.     APPLE "warrants this Apple-branded hardware product against defects in materials and workmanship under normal use for a period of ONE (1) YEAR from the date of retail purchase by the original end-user purchaser ("Warranty Period")." Normal use, as set forth by APPLE, include operating "iPad in a place where the temperature is between 0∘ and 35∘ C. (32∘ and 95∘ F.)."

103.     In addition, APPLE's commercials depicting use of the iPad outdoors, as described herein, became part of the basis of the bargain between consumers and APPLE, creating express warranties that the product purchased by the Representative Plaintiffs and the California Class members would conform to APPLE's representations.

104.     Representative Plaintiffs and each member of the California Class viewed and reasonably and justifiably relied on Defendant's express warranties when purchasing the iPad and, had the facts been known, would not have purchased the iPad and/or would not have purchased it at the price at which it was offered.

105.     APPLE breached its express warranties because the iPad does not conform to the promises and/or affirmations made by APPLE to the Representative Plaintiffs and members of the California Class, as alleged herein.

106.     APPLE's sale of the iPad is also subject to an implied warranty of merchantability (i.e., that the iPad passes without objection in the trade under the descriptions and advertisements provided by APPLE, is fit for the ordinary purpose for which such goods are used, and conforms to the promises and affirmations of fact made on the container and labels).

107.     When Defendant placed the iPad into the stream of commerce, it knew and/or reasonably should have known that the intended and ordinary purpose of the iPad was to function as a tablet computer for mobile consumption of media such as books and periodicals, movies, music, and games and for general internet and e-mail access, and be operational for these uses in ambient temperatures between 32∘ and 95∘ F.

108.     The iPad cannot perform its ordinary and intended purpose because it suddenly and unexpectedly stops functioning during outdoor use, particularly in direct sunlight, even when

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1   used within the specified temperature range, preventing further use until the product sufficiently

2   cools.

3        109.     As set forth herein, Defendant failed to comply with its obligations under its

4   express warranty and under its implied warranty of merchantability in that it did not provide a

5   product that functions as warranted, or that serves its ordinary or intended purpose.

6        110.     Representative Plaintiffs and the California Class Members have suffered and

7   will continue to suffer damages as a direct and proximate result of Defendant's failure to comply

8   with its warranty obligations, including, but not limited to the money paid to Defendant for a

9   device which can be used for only a fraction of its intended purposes, as well as the fear and

10   anxiety induced by the iPad's unreliable performance in outdoor conditions, further limiting its

11   utility and value to consumers, and are entitled to judgment pursuant to California Civil Code §§

12   1791.1(d) and 1794, as well as attorneys' fees, costs and interest pursuant to California Civil

13   Code § 1794(d).

14

15                     **SEVENTH CLAIM FOR RELIEF**

16   **UNFAIR BUSINESS PRACTICES UNDER THE UNFAIR COMPETITION ACT**
          **(California Business & Professions Code §§ 17200-17208)**
          ***(for the California and Nationwide Classes)***

17

18        111.     Representative Plaintiffs incorporate in this claim for relief each and every

19   allegation of the preceding paragraphs, with the same force and effect as though fully set forth

20   herein.

21        112.     Representative Plaintiffs further bring this claim for relief seeking equitable and

22   injunctive relief to stop Defendant's misconduct, as complained of herein, and to seek restitution

23   of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business

24   practices described herein.

25        113.     Defendant's knowing conduct, as alleged herein, constitutes an unlawful and/or

26   fraudulent business practice, as set forth in California Business & Professions Code §§ 17200-

27   17208. Specifically, Defendant conducted business activities while failing to comply with the

28   legal mandates cited herein.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

114.    Defendant's conduct was, and continues to be, unlawful in that it is a violation of California Civil Code § 1750, et seq. and California Business & Professions Code § 17500, et seq., as alleged herein.

115.    Defendant's conduct was and continues to be fraudulent, because directly or through its agents and employees, Defendant made false representations to Representative Plaintiffs and members of each of the Classes that were likely to deceive Representative Plaintiffs and members of each of the Classes. These false representations misled Representative Plaintiffs and members of each of the Classes into purchasing an iPad.

116.    Defendant's false representations include, but are not limited to, the commercials depicting various outdoor uses and the temperature specifications included with the iPad and/or appearing on APPLE's website, as alleged herein.

117.    APPLE is a California resident, and developed and distributed the false and misleading advertising alleged herein from their headquarters in Cupertino, California.

118.    When purchasing the iPad, Plaintiffs and members of each of the Classes viewed and reasonably and justifiably relied on the misrepresentations developed and distributed by Defendant from California, were unaware of the existence of facts that Defendant suppressed and failed to disclose and, had the facts been known, would not have purchased the iPad or would not have purchased it at the price at which it was offered.

119.    Specifically, Representative Plaintiffs and members of each of the Classes viewed APPLE's website, commercials, and/or product specifications, and, in reliance on those representations, purchased the device for use outdoors.

120.    Defendant's conduct in making the representations described herein, and failing to disclose or remedy the problem, despite knowledge of the iPad's failure to reliably function in outdoor environments and of the existence of consumer complaints regarding this functionality problem, constitutes a knowing failure to adopt policies in accordance with and/or to adhere to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors, engendering an unfair competitive advantage for APPLE, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

121.     In addition, Defendant's conduct was, and continues to be, unfair, in that its injury to millions of purchasers of the iPad is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

122.     Moreover, Representative Plaintiffs and members of each of the Classes could not have reasonably avoided such injury given that APPLE failed to disclose the iPad's use limitations at any point, and Representative Plaintiffs and members of each of the Classes purchased the iPad in reliance on the representations made by Defendant, as alleged herein.

123.     Representative Plaintiffs and members of each of the Classes have been directly and proximately injured by Defendant's conduct in ways including, but not necessarily limited to, the money paid to Defendant for a device which can be used for only a fraction of its intended purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor conditions, further limiting its utility and value to consumers.

124.     APPLE's unfairly-competitive conduct is further demonstrated by its emphasis on use of the iPad's "iBooks" application and deliberate positioning of the iPad as a competitive e-reader (e.g., through APPLE's characterization of the iPad as suitable as a reading device through statements including, but not necessarily limited to, its website's claim that "reading on iPad is just like reading a book"). The e-reader market is saturated with devices including, but certainly not limited to, the Amazon "Kindle," the Barnes & Noble "Nook," the Sony "Daily Edition," the Kobo "eReader" and the Velocity "Micro Cruz Reader," all of which allow consumers to read more content, more often, and in more places, without the burden of handling traditional paper books. However, unlike its e-reader competitors and paper books, the iPad has limited and unreliable functionality outdoors. Among other aspects of the iPad, APPLE's characterization of the device's e-reading capabilities goes far beyond its actual performance capabilities, resulting in an unfair competitive advantage for APPLE.

125.     Defendant has clearly established a policy of accepting a certain amount of collateral damage, as represented by the damages to the Representative Plaintiffs and to members of each of the Classes herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful, and honest business practices, ordinarily

1   borne by its responsible competitors and as set forth in legislation and the judicial record.

2   [moved from paragraph 121]

3

### EIGHTH CLAIM FOR RELIEF
4   **BREACH OF EXPRESS WARRANTY**
5   *(for the California and Nationwide Classes)*

6       126.    Representative Plaintiffs incorporate in this claim for relief each and every

7   allegation of the preceding paragraphs, with the same force and effect as though fully set forth

8   herein.

9       127.    APPLE, as the designer, manufacturer, distributor and seller of the iPad,

10   expressly warranted that the iPad (being offered and sold to the public) would operate properly

11   and without defects, and would, therefore, operate under normal environmental conditions, as

12   advertised.

13       128.    APPLE "warrants this Apple-branded hardware product against defects in

14   materials and workmanship under normal use for a period of ONE (1) YEAR from the date of

15   retail purchase by the original end-user purchaser ("Warranty Period")." Normal use, as set forth

16   by APPLE, include operating "iPad in a place where the temperature is between $0\circ$ and $35\circ$ C.

17   ($32\circ$ and $95\circ$ F.)."

18       129.    In addition, APPLE's representations regarding use of the iPad outdoors and

19   within the specified temperature range, as alleged herein, constitute a description of the goods

20   that became part of the basis of the bargain with purchasers of the iPad. Therefore, these

21   representations created an express warranty that the iPad would function as advertised thereby

22   APPLE.

23       130.    Representative Plaintiffs and members of each of the Classes reasonably and

24   justifiably relied on Defendant's warranties, as set forth herein, when purchasing the iPad.

25       131.    APPLE breached the express warranties identified in this Complaint because the

26   iPad did and does not conform to the promises or affirmations made by APPLE to the

27   Representative Plaintiffs and members of each of the Classes.

28       132.    Representative Plaintiffs, on their own behalf and on behalf of members of each

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    of the Classes, have provided and/or will provide reasonable notice to APPLE of the breach of

2    warranty.

3         133.    Representative Plaintiffs and the members of each of the Classes have been

4    directly and proximately injured by Defendant's conduct in ways including, but not limited to,

5    the money paid to Defendant for a device which can be used for only a fraction of its intended

6    purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor

7    conditions, further limiting its utility and value to consumers.

8         134.    As a direct and proximate result of Defendant's unlawful conduct, as set forth

9    herein, Representative Plaintiffs and members of each of the Classes are entitled to monetary

10   damages in the amount of the difference in value between a properly-functioning iPad (as

11   warranted by APPLE) and the improperly-functioning iPad actually purchased by Representative

12   Plaintiffs and members of each of the Classes.

13

14   **NINTH CLAIM FOR RELIEF**
     **BREACH OF IMPLIED WARRANTY**

15   ***(for the California and Nationwide Classes)***

16        135.    Representative Plaintiffs incorporate in this claim for relief each and every

17   allegation of the preceding paragraphs, with the same force and effect as though fully set forth

18   herein.

19        136.    APPLE is a merchant engaged in the business of selling electronic devices to

20   consumers. APPLE's sale of the iPad is subject to an implied warranty of merchantability.

21   However, APPLE breached said warranty by selling iPads which do not pass without objection

22   in the trade under the descriptions and advertisements provided by APPLE, are not fit for the

23   ordinary purpose for which such goods are used, and do not conform to the promises and

24   affirmations of fact made on the container and labels.

25        137.    Representative Plaintiffs and members of each of the Classes purchased iPads

26   and used them for their ordinary and intended purpose (i.e., as a tablet computer intended for

27   mobile utilization of media such as books and periodicals, movies, music, and games and for

28   general internet and e-mail access, operational in ambient temperatures between 32° and 95° F.).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

138.    The iPad cannot perform its ordinary and intended purpose because it suddenly and unexpectedly stops functioning when it becomes overheated, even when used in the expressed temperature range, preventing its use for any purpose until the product sufficiently cools.

139.    When Defendant placed the iPad into the stream of commerce, it knew, reasonably should have known, and/or was obligated to understand that the intended and ordinary purpose of the iPad was to function consistently under normal environmental conditions, including use in sunlight and within the specified temperature range.

140.    Representative Plaintiffs and members of each of the Classes reasonably expected that the iPad they purchased would function consistently, and without sudden and unexpected interruption, when used outdoors within the operating temperature parameters.

141.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Representative Plaintiffs and members of each of the Classes were injured in ways including, but not limited to, the money paid to Defendant for a device which can be used for only a fraction of its intended purposes, as well as the fear and anxiety induced by the iPad's unreliable performance in outdoor conditions, further limiting its utility and value to consumers, and are entitled to damages in an amount to be proven at trial.

### TENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
#### (for the California and Nationwide Classes)

142.    Representative Plaintiffs incorporate in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

143.    As alleged herein, Defendant intentionally and/or recklessly made false representations to Representative Plaintiffs and members of each of the Classes to induce them to purchase iPads. Representative Plaintiffs and members of each of the Classes reasonably relied on these false representations when purchasing their iPads.

144.    Representative Plaintiffs and members of each of the Classes did not receive all

of the benefits promised by Defendant, and paid more to Defendant for their iPads than they otherwise would and/or should have paid.

145.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit and/or other compensation it obtained from the deceptive, misleading, and unlawful conduct alleged herein.

146.    Representative Plaintiffs and members of each of the Classes are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## RELIEF SOUGHT

**WHEREFORE, the Representative Plaintiffs,** on behalf of themselves and the proposed **Plaintiff Classes**, pray for judgment and the following specific relief against **Defendant**, as follows:

1.    That the Court declare, adjudge and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23;

**For the California Class Only:**

2.    That defendant APPLE be found to have violated California Civil Code § 1790, *et seq.*, as to the Representative Plaintiffs and California Class members;

3.    An award to Representative Plaintiffs and the California Class members of damages in an amount to be proven at trial;

4.    For reasonable attorneys' fees, pursuant to California Civil Code § 1794(d);

**For the California and National Classes:**

5.    That defendant APPLE be found to have violated California Business & Professions Code § 17200, *et seq.*, § 17500, *et seq.* and California Civil Code § 1750, *et seq.*, as to the Representative Plaintiffs and members of both Classes;

6.    That the Court order Defendant to pay restitution to the Representative Plaintiffs

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    and members of both Classes due to Defendant's unlawful activities, pursuant to California

2    Business and Professions Code §§ 17200-17208;

3         7.   That the Court further enjoin Defendant, ordering it to cease and desist from

4    unlawful activities in violation of California Business and Professions Code § 17200, *et seq.*;

5         8.   For reasonable attorneys' fees, pursuant to California Code of Civil Procedure §

6    1021.5 and/or California Civil Code § 1780(d);

7         9.   That defendant APPLE be found to have made fraudulent and/or negligent

8    misrepresentations to Representative Plaintiffs and members of both Classes;

9         10.  An award to Representative Plaintiffs and members of both Classes of damages in

10   an amount to be proven at trial;

11        11.  For punitive damages in an amount appropriate to punish Defendant and to deter

12   others from engaging in similar misconduct in the future;

13        12.  For all other Orders, findings and determinations identified and sought in this

14   Complaint;

15        13.  For interest on the amount of any and all economic losses, at the prevailing legal

16   rate; and

17        14.  For costs of suit and any and all other such relief as the Court deems just and

18   proper.

19

20                          **JURY DEMAND**

21        Representative Plaintiffs and members of each of the Plaintiff Classes hereby

22   demand trial by jury on all issues triable of right by jury.

23

24   Dated: March 14, 2011              **SCOTT COLE & ASSOCIATES, APC**

25

26                          By:   /s/ Matthew R. Bainer
                                  Matthew R. Bainer, Esq.
27                                Attorneys for Representative Plaintiffs
                                  and the Plaintiff Classes

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800